# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARNOLD CHASE FAMILY, LLC, et al., | : |
| Plaintiffs, | : |
| v. | : No. 3:08cv00581 (MRK) |
| UBS AG; UBS SECURITIES, LLC, and UBS FINANCIAL SERVICES, LLC, | : |
| Defendants. | : |

## RULING AND ORDER

Defendant UBS Financial Services, Inc.'s ("UBS")[1] Motion to Dismiss [doc. # 15] and Plaintiffs' Amended Application for Prejudgment Remedy in Aid of Arbitration [doc. # 16] raise an interesting and apparently undecided issue regarding arbitration of securities claims under the rules of the Financial Industry Regulatory Authority ("FINRA"), the successor to the National Association of Securities Dealers ("NASD").[2] Specifically, UBS contends that FINRA rules governing customer arbitrations prohibit Plaintiffs from asking a court for a prejudgment remedy in aid of a pending arbitration. While the answer to the question UBS poses is far from clear, the Court disagrees with UBS, and therefore DENIES its Motion to Dismiss [doc. #15].

---

[1] Plaintiffs have dismissed the action against UBS AG and UBS Securities, LLC. *See* Notice of Voluntary Dismissal of Application for Prejudgment Remedy against UBS AG and UBS Securities, LLC [doc. # 27].

[2] The NASD was the primary self-regulatory organization responsible for the regulation of the securities industry in the United States, with delegated authority from the U.S. Securities and Exchange Commission ("SEC"). In July 2007, the NASD was consolidated with the enforcement, arbitration, and member regulation arm of the New York Stock Exchange, known as NYSE Regulation, Inc., to create the Financial Industry Regulatory Authority (FINRA). *See* About FINRA, http:// www.finra.org/AboutFINRA/CorporateInformation/index.htm.

In April 2008, Plaintiffs commenced an arbitration against UBS before FINRA regarding their claim that they invested funds in securities that were allegedly represented to be "cash alternatives," when they were not, and as a consequence, Plaintiffs were injured financially. At or around the same time, Plaintiffs filed this action seeking an attachment of UBS assets of approximately $150 million to secure any award they may receive from the arbitration. UBS responded by moving to dismiss Plaintiffs' application for an attachment under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* because the rules of FINRA "prohibit judicial proceedings concerning matters pending in arbitration." *See* Mem. of Law in Support of Mot. to Dismiss [doc. #15-1] ("UBS Memorandum") at 6. In particular, UBS relied on FINRA Rule 12209, which states as follows:

> During an arbitration, no party may bring any suit, legal action, or proceeding against any other party that concerns or that would resolve any of the matters raised in the arbitration.

UBS Memorandum [doc. # 15-1], Ex. B (Code of Arbitration Procedure for Customer Disputes (as of Dec. 27, 2007)).[3]

According to UBS, the broad language of Rule 12209 evidences FINRA's intent to bar any ancillary legal proceedings involving claims in arbitration. Furthermore, UBS contends that prejudgment remedies are unnecessary in connection with FINRA arbitrations because FINRA rules require payment of all awards within thirty days of issuance. *See* Rule

---

[3] Rule 12209 is the successor to Rule 10106, which provided as follows: "No party shall, during the arbitration of any matter, prosecute or commence any suit, action or proceeding against any other party touching upon any of the matters referred to arbitration pursuant to this Code." According to a comparison of old and new rules on FINRA's website, the change in language from Rule 10106 to Rule 12209 was not intended to effectuate any "substantive change" in the rule. *See* http://www.finra.org/ArbitrationMediation/Arbitration/CodeofArbitrationProcedure/p009566.

12904(I). FINRA members must certify in writing that an arbitration award was paid, *see* NASD Notice to Members 00-55 (Aug. 2000), and FINRA can sanction a member that fails to pay an arbitration award, NASD Procedural Rule 9554, *available at* http://finra.complinet.com/finra.[4] In this regard, UBS notes that the SEC approved FINRA's arbitration rules as adequate to protect securities customers such as Plaintiffs. *See* Securities Industry and Financial Markets Association, White Paper on Arbitration in the Securities Industry (2007), *available at* http://sifma.org/regulatory/pdf/arbitration-white-paper.pdf.

During a conference call with counsel for the parties on July 7, 2008, the Court asked them for further briefing regarding FINRA's intent in adopting Rule 12209 and also invited UBS to determine if FINRA wished to submit a brief to the Court regarding its position on the proper interpretation of Rule 12209. While the parties filed additional briefs, the Court has not received any submission from FINRA.

All parties agree that Plaintiffs are bound by Rule 12209; the only question is what judicial proceedings does Rule 12209 prohibit. While UBS's position is plausible, the Court rejects it for several reasons.

First, Rule 12209 needs to be considered in the context of governing Second Circuit law regarding the relationship between pending arbitrations and certain ancillary judicial proceedings, such as requests for prejudgment remedies or injunctions. As this Court has previously observed,

> [The] Second Circuit has made it clear in a series of decisions that the Court has both the power and duty to entertain a motion for preliminary injunction pending the results in [an] arbitration. And this is true even though, as is the case here, the parties

---
[4] Indeed, UBS asserts that arbitrators lack the power to order such relief.

are entitled under the rules of the arbitral tribunal they have chosen to seek *pendente lite* relief directly from the arbitrator.

*Discount Trophy & Co., Inc. v. Plastic Dress-Up Co.*, No. 3:03cv2167(MRK), 2004 WL 350477, at *8 (D. Conn. Feb. 19, 2004) (citing *Am. Express Fin. Advisors, Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984)). Indeed, in *Thorley*, the Second Circuit reversed a district court that had declined to grant an injunction on the grounds that the parties could obtain one from the arbitrators themselves. The Second Circuit stated, "the expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits. Nor is this duty affected by the pro-arbitration policy manifested in the [Federal Arbitration Act]." *Thorley*, 147 F.3d at 231 (citations omitted); *Blumenthal*, 910 F.2d at 1053 ("[T]he pro-arbitration policies reflected in the foregoing Supreme Court decisions [regarding the Federal Arbitration Act] are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction.").

As this Court has also previously noted, the Second Circuit has taken a similar approach regarding provisional remedies in aid of arbitration, such as prejudgment remedies. *See Bahrain Telecommunications Co. v. DiscoveryTel, Inc.*, 476 F. Supp. 2d 176, 181 (D. Conn. 2007). Thus, in *Borden Inc. v. Meiji Milk Prods., Inc.*, 919 F.2d 822 (2d Cir. 1990), the Second Circuit explained as follows:

> In the instant case, far from trying to bypass arbitration, Borden sought to have the court *compel* arbitration. New York law specifically provides for provisional remedies in connection with an arbitrable controversy, ... and the equitable powers of federal courts include the authority to grant it. Entertaining an application for such

4

>a remedy, moreover, is not precluded by the Convention but rather is consistent with its provisions and spirit.

*Id.* at 826 (citations omitted) (referencing a provision of New York law that permits a court to order an attachment or an injunction in aid of arbitration). The decision in *Borden* expressly relied upon and quoted from Judge Learned Hand's decision in *Murray Oil Prods. Co. v. Mitsui & Co.*, 146 F.2d 381, 384 (2d Cir. 1944), where the court permitted a district court to continue a prejudgment attachment pending completion of an arbitration. As Judge Hand explained, the desire for prompt decisions in arbitration, as manifested in both the Convention and the FAA, "is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." *Murray Oil*, 146 F.2d at 384; *see also Bahrain Telecommunications*, 476 F. Supp. 2d at 181. Therefore, at least in the Second Circuit, courts have historically entertained requests for provisional remedies during the pendency of arbitrations and have viewed the judicial consideration of such requests as consistent with, and not contrary to, the spirit of the Federal Arbitration Act and a party's right to submit a dispute to arbitrators and not courts.

Second, while parties may certainly contract away their right to invoke the historic jurisdiction of courts to provide provisional remedies in aid of arbitration, they should be clear and specific about what they are doing, since any such provision affects the jurisdiction of the courts and securities customers themselves do not have much say in writing of FINRA's rules. Despite the seemingly broad language of Rule 12209 (which, the Court might add, is narrower than the "touching upon" language of its predecessor), there is no indication whatsoever that the rule was intended, as UBS contends, to "prohibit judicial proceedings concerning matters pending in arbitration." *See* UBS Memorandum [doc. #15-1] at 6. The Court says this for several reasons.

For one, nowhere in any of the explanatory materials regarding customer arbitrations published by FINRA – and there is an abundance of such materials from lengthy lists of Frequently Asked Questions to Arbitration Guides – does FINRA ever say that Rule 12209 bars all judicial proceedings while an arbitration is pending, let alone that the intent of Rule 12209 is to prevent customers from invoking the historic powers of courts to provide provisional remedies in aid of arbitration. Nor did FINRA when it amended Rule 12209 explain that the purpose of the rule is to prevent customers from seeking prejudgment remedies. Indeed, as UBS acknowledges, FINRA has never explained what judicial proceedings Rule 12209 is intended to prohibit.

For another, we know that Rule 12209 and its predecessor have not been construed by courts as barring *any* judicial proceeding while an arbitration is pending. Even UBS concedes that a party could go to court to compel a recalcitrant party to participate in a FINRA-commenced arbitration. *See, e.g., Prudential Securities, Inc. v. Yingling*, 226 F.3d 668, 672 (6th Cir. 2000) (holding that court has jurisdiction to consider securities firm's request for an injunction barring arbitration of stale claims); *Bopardikar v. Morgan Stanley & Co.*, No. 08cv01136, 2008 WL 2704491, at *1 (D. Colo. July 1, 2008) (holding that court has jurisdiction to entertain request for a judgment declaring that plaintiff is not obligated to arbitrate a claim before a FINRA arbitration); *O.N. Equity Sales Co. v. FINRA Dispute Resolution, Inc.*, No. 1:07cv804, 2008 WL 281788, at *2 (S.D. Ohio Feb. 1, 2008) (holding that court has jurisdiction to consider injunction barring pending FINRA arbitration); *Herbert J. Sims & Co., Inc. v. Roven*, 548 F. Supp. 2d 759, 764-66 (N.D. Cal. 2008) (same). The customer arbitration rules themselves contemplate that under some circumstances, judicial class actions involving the subject matter of an arbitrable claim may be pending while an arbitration proceeds. *See* Rule 12204. Finally, a party or arbitration panel may also conceivably need judicial

assistance to enforce a subpoena of an unrelated third party or to gather information for a FINRA arbitration. Therefore, despite its arguments about the breadth of the language of Rule 12209, UBS cannot seriously maintain that the rule bars any and all judicial action.

Third, Rule 12209 can be construed in a way that allows courts to consider awarding the provisional remedies they have historically provided in aid of arbitration and still give meaning to the rule's language. For Rule 12209 can be construed to bar parties from submitting to courts the same "matters raised in the arbitration." *See* J. Long & S. Lipner, Securities Arbitration Desk Reference § 10106:1 (2007) (commenting that Rule 10106, the predecessor of Rule 12209, "is designed to promote efficiency by preventing parallel court proceedings and/or interlocutory 'appeals' to judicial authorities while an arbitration is pending."). Such a reading of Rule 12209 would not prohibit a request for a provisional remedy in aid of arbitration. As this Court noted explained recently in *Bahrain Telecommunications*:

> [A] prejudgment remedy . . . is designed to maintain the *status quo* – namely, the parties' financial *status quo* pending issuance of a final judgment. *See E.J. Hansen Elevator, Inc. v. Stoll*, 167 Conn. 623, 629, 356 A.2d 893 (1975) (Prejudgment remedies are "primarily designed to forestall any dissipation of assets by the defendant and to bring them into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff may recover . . . ."). A prejudgment remedy does not interfere with the arbitral process but merely ensures that there will be assets available to satisfy any judgment the arbitrators themselves may render. Moreover, consideration of a motion for a prejudgment remedy normally will require a court to delve less deeply into the merits of the parties' disputes (and thus intrude less deeply into the domain of the arbitrators) . . . , since the standard for granting a prejudgment remedy-at least in Connecticut-is only probable cause and does not require a showing of likelihood of success on the merits and irreparable harm. *See, e.g., Three S. Dev. Co. v. Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984) ("probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false.").

476 F. Supp. 2d at 182; *see also Orsini v. Tarro*, 80 Conn. App. 268, 272 (2003) ("[P]rejudgment remedy proceedings . . . are not involved with the adjudication of the merits of the action brought

7

by the plaintiff or with the progress or result of that adjudication.") (quotation marks omitted); *Tyler v. Schnabel*, 34 Conn. App. 216, 219 (1994) ("Prejudgment remedy proceedings do not address the merits of the action.").

Fourth and finally, UBS's arguments about the need for provisional remedies in securities arbitrations and the role of the SEC might be sufficient to cause FINRA to adopt a rule that bars such relief. But it is far from clear to this Court that provisional remedies are completely unnecessary in securities arbitrations. While UBS undoubtedly has sufficient assets to respond to any arbitration award in this case, that is not necessarily true of every member broker. Not every member participant in FINRA arbitrations has the resources of UBS. Moreover, one only has to recall what happened recently with Bear Stearns to understand why some customers might like to have the security of knowing that if they prevail in arbitration, assets will be available to satisfy any award.

Therefore, the Court DENIES UBS's Motion to Dismiss [doc. # 15]. On August 15, 2008 at 9:00 am, the Court will hold a telephonic conference call with counsel to discuss scheduling of their Application for Prejudgment Remedy in Aid of Arbitration. Plaintiffs' counsel will be responsible for initiating the call.

                                                        IT IS SO ORDERED,

                                                        /s/ Mark R. Kravitz
                                                        United States District Judge

**Dated at New Haven, Connecticut: August 4, 2008.**